**FOR PUBLICATION**                                                            **CLOSED**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

ROBERT M. HOWLEY,                         :
                                          :
                                                         : Civil Case No. 06-5992 (FSH)
            Plaintiff,                    :
                                          :
        v.                              : OPINION
                                          :
MELLON FINANCIAL CORPORATION, et al.,     : Date: January 29, 2008
                                          :
            Defendants.                  :

---

**HOCHBERG, District Judge.**

       This matter comes before this Court upon the parties' Cross Motions for Summary Judgment.[1] The case arises from a dispute regarding Plaintiff's entitlement to benefits under the Displacement Program offered by Defendant to employees who lose their jobs. The dispute relates to whether an employee whose division is sold to another company qualifies under the "Sale of Business" exception to the Displacement Program if the employee's job at the new company is terminated on his first morning as part of a reduction in force ("RIF") that had been planned, prior to the sale, by his former company, a Mellon subsidiary. For the reasons given below, the Court grants Plaintiff's Motion for Partial Summary Judgment, denies Defendants' Motion for Summary Judgment, dismisses Counts Three through Five of Plaintiff's complaint to

---

[1] Plaintiff moves only for Summary Judgment as to his entitlement to benefits under the Displacement Program, but argues that there are disputed issues of material fact related to his claims for interference under ERISA § 510. Plaintiff admits that if his motion for Partial Summary Judgment is granted, his other claims would be mooted.

1

the extent they relate to state law claims on grounds of ERISA preemption, and finds that the remainder of Plaintiff's claims are mooted by the grant of partial summary judgment.

I.      **Undisputed Factual Background**[2]

Plaintiff Robert Howley ("Howley" or "Plaintiff") was employed by a subdivision of Mellon Financial Corporation ("Mellon").  Howley's subdivision was originally an independent company called Buck and eventually, after it was purchased by Mellon, was renamed Mellon Human Resources and Investor Solutions ("Mellon HR&IS").  On May 25, 2005, Mellon HR&IS was sold to Affiliated Computer Services, Inc. ("ACS").  Through these name changes and changes in parent company, Howley had been employed by Buck/Mellon HR&IS for approximately 25 years.  Because of his long service at the company, Howley was a grandfathered member of the Buck Pension Plan, which permitted early retirement at the age of 50 with 15 years of service.  At the time of his termination, Howley was 11 months shy of early retirement.  Thus, with his year of participation in the Displacement Plan, Howley would qualify for early retirement as of June 1, 2006.

In or about the Fall of 2004, Mellon decided to divest the group of businesses operating as Mellon HS&IS.  Ultimately, Mellon negotiated a stock purchase agreement through which, among other things, ACS agreed to purchase Mellon's 100% stock interest in Mellon HS&IS.  On May 25, 2005, the sale was completed and all "transferred employees" became employees of ACS.

On the morning of his first day of work for ACS, Plaintiff was told that he was fired and

---

[2] This factual background summary is taken from uncontested facts in Plaintiff's and Defendants' L. Civ. R. 56.1 Statements of Material Facts.

was given a few days to "wind up" his work and pass on his accounts. Mellon does not argue that Plaintiff was fired from ACS because of any action by Plaintiff. Rather, it is undisputed that Plaintiff was fired as part of a RIF. Although the parties disagree as to the specific decision-makers involved and whether the knowledge of the decision should be imputed to Mellon, nonetheless, the parties agree that the decision to terminate Plaintiff as part of the RIF was made at the Mellon subsidiary prior to the sale of Mellon HR&IS to ACS.

Mellon argues that because Plaintiff's employment transferred to ACS and the RIF was actually implemented by ACS, Mellon is not responsible for any decisions that ACS made about whether to continue to employ Plaintiff. Essentially, Mellon argues that Plaintiff received an "offer" of employment at ACS at the moment of the stock sale at 12:01 a.m. on May 25, 2005, and that Plaintiff transferred, without change in job, to ACS, where he was fired at approximately 10:00 a.m. on May 25, 2005 based on a list of employees selected for termination by Mellon HR&IS. Thus, Mellon asserts that the conditions of the Displacement Benefit Program were met when the "job offer" was made at 12:01 a.m. and that Plaintiff is thus not entitled to Displacement Benefits from Mellon.

Plaintiff notes that unlike any of the other 99 fired employees, he has long enough service with Mellon to obtain certain benefits by taking early retirement, but that he was a few months shy of early retirement immediately on May 25, 2005 – the date he was purportedly "transferred." Under the Displacement Program at Mellon, he would have been entitled to continue in the 401k Plan and various other plans for the year following his termination, thus allowing him to take early retirement after turning 50. Importantly for Plaintiff, he was grandfathered into a plan in which the employer would pay 82.5% of his medical premiums during retirement. Thus, if the

3

pre-planned RIF had occurred the day before the transfer of employees, Howley would have received benefits under Mellon's Displacement Program which would allow him to continue in the grandfathered Buck Retirement Plan and would entitle him to early retirement benefits which were substantially better than the benefits available to him through ACS's Displacement Program.

Throughout the negotiations related to the sale of Mellon HR&IS, Plaintiff was never informed that he had been selected for termination immediately upon the transfer of his division to ACS. The senior managers at Mellon HR&IS had clearly pre-determined the employees who had been selected for firing, but had not told them.

## II.     Analysis

### A.     Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In other words, "summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Indiana Hosp., 843 F.2d 139, 143 (3d Cir. 1988). A fact is material if it might affect the outcome of the case, and an issue is genuine if the evidence is such that a reasonable fact finder could return a verdict in favor of the nonmovant. Anderson, 477 U.S. at 248 (1986); In re Headquarters Dodge, 13 F.3d 674, 679 (3d Cir. 1993).

### B.     Standard of Review

Where an ERISA-governed benefit plan gives the plan administrator or fiduciary discretion in "interpret[ing] the plan and making benefits determinations," as Defendants have in this case, a court reviewing a benefits denial employs an "arbitrary and capricious" standard. Skretvedt v. E.I. Dupont De Nemours & Co., 268 F.3d 167, 173-74 (3d Cir. 2001). Under this standard, the reviewing court must defer to the administrator unless its decision was "without reason, unsupported by substantial evidence, or erroneous as a matter of law." Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 392 (3d Cir. 2000) (noting that a plan administrator's decision is supported by substantial evidence if the evidence is sufficient for a reasonable person to agree). The arbitrary and capricious standard is then heightened where the structure of a plan presents an inherent conflict of interest or where specific facts in evidence call the impartiality of the administrator into question. Pinto, 214 F.3d at 383-84; Goldstein v. Johnson & Johnson, 251 F.3d 433, 442 (3d Cir. 2001); Kosiba v. Merck & Co., 384 F.3d 58, 65-66 (3d Cir. 2004). For instance, the Third Circuit has found that the potential for a conflict of interest exists where an employer both funds and administers a plan. Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc., 298 F.3d 191, 197 (3d Cir. 2002). In Pinto, the Third Circuit established a "sliding scale approach" to use in such cases, intensifying the degree of scrutiny to match the degree of the conflict. 214 F.3d at 391. However, even if the court applies a heightened arbitrary and capricious standard of review, the Third Circuit has held that "a court may not substitute its own judgment for that of the plan administrators." Stratton v. E.I. DuPont De Nemours & Co., 363 F.3d 250, 256 (3d Cir. 2004) (citing Smathers, 298 F.3d at 199). Moreover, the Third Circuit has also found "that the risk of a conflict of interest is decreased where the administrator and funder

5

of the plan is the employer, rather than an insurance company, because the employer has 'incentives to avoid the loss of morale and higher wage demands that could result from denials of benefits' suggesting that there is at least some counter to the incentive not to pay claims." Smathers, 298 F.3d at 197 (quoting Nazay v. Miller, 949 F.2d 1323, 1335 (3d Cir. 1991)).  Here, however, Mellon is the former employer rather than the continued employer of Plaintiff.  Thus, Plaintiff argues that Mellon cannot mitigate its financial conflict of interest based upon the contention that any financial incentive to deny benefits the offset discussed in Smathers.

Regardless of which standard a court applies, it "must base its ultimate determination on the record before the plan administrator." Kosiba, 384 F.3d at 69.  The Court may only overturn a plan administrator's decision "if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan." Smathers, 298 F.3d at 199.

In this case, Defendant Mellon is both the "sponsor" and the "Plan Administrator" of the Plan, though it is important to note that Mellon is an employer, not an insurance company.  The Plan was a self-funded plan – benefits were paid from Mellon's general operating assets.  Thus, any benefits paid would be a direct cost to Mellon.  Furthermore, because Plaintiff is no longer employed by Mellon, there should be no offset for any "loss of morale . . . and higher wage demands that could result from the denial of benefits."  Stratton v. E.I. DuPont de Nemours & Co., 363 F.3d 250, 254 (3d Cir. 2004); see also Kosiba v. Merck Co., 384 F.3d 58, 65 (3d Cir. 2004).

The Court finds that Mellon does have a financial conflict of interest in this case. Furthermore, because Mellon's decision in this case related to a subsidiary that was sold to

6

another company rather than to current employees, Mellon's conflict of interest not offset by the factors discussed in Smathers related to the interest of an employer in maintaining goodwill with its current workforce. Thus, on the sliding scale, a somewhat heightened standard of review is applied.

### C. Record Before and Decision of the Claims Administrator

Mellon asserts that it took a "snap shot" of Plaintiff's employment at 12:01 a.m. immediately upon the stock sale to ACS. Under this "snap shot" view, Plaintiff had the same job title, same job location, and same salary as he had previously held with Mellon HR&IS - but only for 10 more hours. Thus, the Displacement Program determined that Plaintiff had not been "displaced" by the ACS stock sale as that term was defined by the Plan. Plaintiff appealed and the Displacement Program Administrator affirmed the denial of Plaintiff's claim for benefits.

Mellon asserts that it did not have knowledge that employees were being selected for RIF. The person who made the selections was an employee of Mellon's subsidiary, Mellon HR&IS (either Howard Fine and/or Michael Horton, both of whom were senior managers of Mellon HR&IS). Mr. Fine reported to a Mellon Vice-President, James Armanda, who oversaw the sale of Mellon HR&IS. Mr. Armanda testified that if he had known that a RIF list was being compiled, he would have told the senior managers of HR&IS not to do it.

Mellon's actual knowledge at its senior corporate managerial level of its own subsidiaries' plans for a RIF does not matter because Mellon's subsidiary was indisputably putting employee names, including Plaintiff's, on the list of names to be fired; this list was compiled by the Mellon subsidiary well before the sale of that subsidiary to ACS. Both Mellon and its subsidiary are part of the same Displacement Program at issue in this case. Under the

7

Mellon Displacement Program, Plaintiff is entitled to Displacement Benefits unless:

> "the terms of the sale, contract or transfer provide for employment of the employee . . . that . . . does not involve a significant change in responsibilities from those assigned to the employee immediately prior to the sale or transfer . . . is at a location within a thirty (30) mile radius of the employee's locations immediately prior to the sale or transfer [and] . . . initially provides a base salary and incentive compensation opportunities which, in the aggregate are reasonably similar to those provided by the Participating Mellon Company immediately prior to the sale or transfer."

(Displacement Program Summary Plan Description.)

Thus, Mellon is required to analyze the new job that Plaintiff was "offered" to determine whether the job he got at ACS was essentially the same job that he had with Mellon HR&IS.

### D.    Analysis

Mellon argues that it need look no further than the terms of the sale contained in the Purchase Agreement to determine that Plaintiff is ineligible for Displacement benefits.  This argument ignores the provisions regarding the type and nature of job that must be provided to the transferred employee.  In this case, Plaintiff was terminated immediately upon reporting for his first day of work with ACS.  Moreover, the decision to terminate Plaintiff was clearly made by a Mellon subsidiary prior to the sale of Mellon HR&IS.  Thus, it was clear prior to the sale that Plaintiff would never have the opportunity to perform his job at ACS and that his job responsibilities would therefore not be the same, his salary would not be the same, and his work location, while not more than 30 miles away, would not be the same because he would have no work location.  In sum, pre-planned immediate termination is not a job offer that satisfies the requirements of the Displacement Program.

Mellon also argues that the terms of sale contained in the Purchase Agreement definitively demonstrate that employees transferred in the sale of Mellon HR&IS are not eligible

8

for the Displacement Program at Mellon. While Mellon may have negotiated with ACS to require that ACS provide offers of employment to all Mellon HR&IS employees who would be part of the sale, Mellon's own subsidiary created the "RIF list." Thus, Plaintiff was never given a *bona fide* offer of employment that met the standards set forth in the terms of the sale. In other words, Mellon did not abide by its own negotiated terms. Because (1) the decision to direct a RIF at Plaintiff was made <u>before</u> the transfer of Mellon HR&IS to ACS, and (2) as a result, Plaintiff never received any offer of employment at ACS, Mellon, as Plan Administrator, must take responsibility for the decision.

      Mellon's insistence upon a "snap shot" review of an employee's termination was thus arbitrary and capricious because it ignored the reality of Plaintiff's non-employment offer implemented pursuant to a pre-planned RIF. Plaintiff was fired immediately and not for cause; thus, he was <u>not</u> provided a job that had the same responsibilities and salary as the job he had with Mellon HR&IS. For Mellon to insist that he had such an offer at 12:01 a.m. is disingenuous. As Judge Fuentes recognized in his concurring opinion in <u>LaFata v. Raytheon Co.</u>, 147 Fed. Appx. 258 (3d Cir. 2005), "Whether employees are terminated upon the sale of a business, for severance purposes, does not hinge on whether the sale is structured as a sale of stock or a sale of assets. . . . An employee who experiences a radical change in the terms of employment is effectively terminated from the previous position; the fact that the employee may be offered a new position . . . does not affect the employee's interest in compensation under a severance plan." 147 Fed. Appx. at 264-65. The reasoning in the concurring opinion in <u>La Fata</u> is persuasive with greater force. Plaintiff was protected by the Displacement Plan from having no equivalent job if his division was sold. In this case, Plaintiff was pre-selected not to have a

job when the subsidiary was sold and is thus entitled to benefits under the Mellon Displacement Plan.

Because Mellon insisted on the "snap shot" review of Plaintiff's claim at 12:01 a.m., with no regard to the fact that its own subsidiary had planned to have Plaintiff fired prior to the date of the sale, the "snap shot" review is arbitrary and capricious. Indeed, the review did not even consider whether the job that he was actually offered (i.e., no job at all) provided the same responsibility and salary as the job that he had at Mellon HR&IS. Therefore, the Court finds that Mellon's review as Plan Administrator was arbitrary and capricious. Plaintiff is thus entitled to benefits under Mellon's Displacement Benefit Program.[3]

### E.     Plaintiff's Section 510 Claims

Plaintiff has also alleged a violation of Section 510 of ERISA, which makes it unlawful for any person to discharge or discriminate against a participant or beneficiary of an ERISA plan for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. 29 U.S.C. § 1140. According to the Supreme Court, "[b]y its terms, § 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 143 (1990).

Plaintiff argues that the RIF was planned and organized to have him terminated after the closing as a way for Mellon to save money on his retirement benefits (i.e., as a way to interfere with his benefits as prohibited by Section 510). Plaintiff also argues that there are disputed issues of material fact related to these claims and that these claims are therefore not ripe for

---

[3] Plaintiff is not entitled to double recovery. Any benefits that he received under the ACS Displacement Plan shall offset those to be paid by the Mellon Displacement Plan.

10

summary judgment.

Mellon responds that Plaintiff is completely incorrect and that Defendants are entitled to summary judgment because Plaintiff cannot make out a prima facie case of interference under Section 510. Mellon notes that the sale of Mellon HR&IS to ACS was a large and complicated transaction, which Mellon argues could not have been orchestrated to merely to interfere with Plaintiff's benefits. Defendants also claim that Plaintiff would have to "establish that he was not permitted – after having failed to apply by the deadline for employment with another subsidiary of the Mellon Group – to be employed by another subsidiary of the Mellon Group with the *expressed and illicit specific intent* to interfere" with his benefits. (Def. Mem. In Supp. at 20.) This virtually incomprehensible argument is absurd. Plaintiff was never informed that he was selected for termination and thus had no reason to apply for a different job with a different Mellon entity.

These arguments clearly present disputed issues of fact related to Mellon's intent. Nonetheless, the Court need not need reach these issues because the finding of summary judgment in favor of Plaintiff on Count One provides Plaintiff with all of the benefits to which he is entitled. Thus, Plaintiff's Section 510 claims are mooted by the decision here.

### F.     Plaintiff's Remaining Claims

In Counts Three through Five, Plaintiff raises claims for non-ERISA benefits and "supplemental state law benefits." These claims appear to relate to benefits that would be available, if at all, only through the ERISA Displacement Program. Thus, to the extent that Plaintiff has asserted state law claims, those claims are entirely preempted by ERISA. Section 502(a) of ERISA, which empowers beneficiaries to recover benefits due to them under the terms of

their plans, to enforce their rights under the terms of the plans, or to clarify their rights to future benefits under the terms of the plans.  29 U.S.C. § 1132.  It also empowers beneficiaries and participants to enjoin any act or practice which violates any provision of Section 502 or the terms of their ERISA plans, or to obtain other appropriate equitable relief.  Id.  Section 502(a) is the exclusive remedy for rights guaranteed under ERISA, including those provided by section 510. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 144 (1990).  Causes of action that purport to raise only state law claims, but which fall within the scope of the civil enforcement provisions of Section 502, are necessarily federal in character and removable to federal court by virtue of the clearly manifested intent of Congress.  Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 66-67 (1987).  See also Rea v. The Hershey Co. 2006 Enhanced Mut. Separation Plan, 2007 WL 776887 (M.D. Pa. Mar. 12, 2007) (dismissing on preemption grounds several state law claims for non-ERISA benefits which were available under a severance plan governed by ERISA).

Furthermore, Plaintiff admits that recovery under Count One provides him with all the benefits to which he is entitled.  Therefore, Counts Three through Five are denied as moot and, to the extent they relate to state law claims, are dismissed as preempted by ERISA.

### G.     Conclusion

For the reasons given above, Plaintiff's Motion for Partial Summary Judgment as to Count One of the Complaint is **GRANTED**.  Counts Two through Five of Plaintiff's Complaint are dismissed as moot.  Defendants' Motion for Summary Judgment is **DENIED**.  A appropriate Order will issue.

                                                            **/s/ Faith S. Hochberg**
                                                            Hon. Faith S. Hochberg, U.S.D.J.

12